IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KELLY CAIN
on behalf of herself and all similarly
situated individuals,

    Plaintiff,

      v.

ALMECO USA, INC., et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:12-CV-3296-TWT

## OPINION AND ORDER

This is an FLSA overtime case.  The Plaintiff worked in three different positions for the Defendant from June 2010 until June 2012, often working over forty hours a week.  The Defendant contends the Plaintiff was not entitled to overtime pay because the positions she held were exempt from the Fair Labor Standards Act overtime requirement.  The Plaintiff, however, believes her positions were clearly under the purview of the Act, and argues that she is entitled to summary judgment on the Defendant's liability.  Each party has provided testimony supporting their descriptions of the Plaintiff's responsibilities.  Given the gulf  between the parties' descriptions of the Plaintiff's roles with the Defendant, the Court will deny summary judgment.

T:\ORDERS\12\Cain\msjtwt.wpd

I. <u>Background</u>

The Defendant, Almeco USA, Inc., is an aluminum processing company with fifteen full-time employees operating out of Duluth, Georgia.  Eleven of the employees work to produce the products Almeco sells while four of the employees work in the company's administrative offices.  The Plaintiff, Kelly Cain, held office positions.

Cain's first position at Almeco was as an inside sales associate, which she held from June 7, 2010, until August 2, 2010.  From August 2010 until January 2012, Cain served as an inventory specialist.  And from January 2012 until her departure from Almeco, the Plaintiff was a credit analyst and human resources administrator.[1]

As an inside sales associate, Cain spent her mornings assisting a senior sales associate and her afternoons entering data from customer orders.  During her mornings she would receive quote requests from the senior sales associate and enter the request into the computer system.  She would then confer with the senior associate and contact the customer concerning the quote.  Cain states she did not herself determine the quotes: she only delivered the quotes determined by the senior associate.  In the afternoons, Cain entered customer orders into the computer inventory system,

---

[1]     These job titles are the titles proffered by Almeco; Cain contends her positions were data entry/inside sales support, data entry, and collections.  For convenience, the Court will use the job titles proffered by Almeco.

manually changing the inventory to reflect the customer orders.  Cain contends this afternoon duty was entirely rote while the Defendant contends that, in the afternoons as an inside sales associate, Cain exercised her judgment on matters of significance for the firm in the same manner she exercised her judgment as an inventory specialist, her second position with the Almeco.

As an inventory specialist, Cain was responsible for entering the data of customer orders, interpreting invoices, and dealing with discrepancies in invoices. Cain contends that in this role she simply entered all the information from each customer order into the inventory tracking software, with each order taking anywhere from thirty minutes to four hours.  She also states she made hotel and car reservations for Almeco customers.  Almeco on the other hand contends that the inventory specialist role required the Plaintiff to essentially review all aspects of each individual manufacturing job Almeco undertook.  Almeco states that Cain was responsible for keeping detailed records of all the aluminum that passed through the factory – a difficult task given the varying sizes of aluminum pieces after the production process. According to Almeco, Cain would then judge whether there was a discrepancy in the amount of scrap aluminum actually used and projected within the company guidelines. In general, Almeco describes Cain's inventory specialist role as one requiring her to police the firm's entire operation.

Finally, Cain served as a credit analyst and human resources administrator during her final six months at Almeco.  As a credit analyst, Cain would manage collection reports, run credit checks, assess credit reports, and make collection calls. She would also generate a bi-weekly report of the exposure of the firm's accounts receivable.  Cain would recommend a credit limit for a new customer, although the accounting manager made the final decision.  Almeco further contends that the Plaintiff had the ability to hold an order based on a customer's credit.  Cain served as a human resources administrator on an as needed basis and would orient new hires, fill out their paperwork, and fill out the forms for termination of employees.  She also prepared the payroll and kept track of employee time.

The Plaintiff has moved for summary judgment.  She asks the Court to find that: (1) she was not exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") at any position with Almeco; (2) she is entitled to liquidated damages in an amount equal to her unpaid overtime; (3) Almeco willfully violated the FLSA; (4) she worked over forty hours a week with each position she held with Almeco without receiving overtime pay; (5) Almeco cannot utilize the fluctuating work week method in calculating unpaid wages; and (6) she be awarded costs and attorney's fees.

## II.  Motion for Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).  The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III.  Discussion

### A.    The Administrative Exception to the FLSA

The Plaintiff seeks summary judgment on the grounds that the Defendant cannot carry its burden to show that the Plaintiff was exempt from the FLSA overtime requirements due to her administrative roles in any of the three positions she held while working for the Defendant.  Those positions were: (1) inside sales associate; (2) inventory specialist; and (3) credit analyst.

Cain served as an inside sales associate from June 7, 2010 through August 2, 2010.  Her duties in this position included serving as an assistant to sales associate Robin Hutmacher in the mornings and entering inventory data in the afternoons. Almeco does not argue that the duties assisting Hutmacher were administrative. Rather, Almeco argues that because Cain spent at least half of each day as an inside sales associate serving as an inventory specialist, she nevertheless qualifies for the exception.  Thus, according to Almeco, if Cain qualified for the administrative exception as an inventory specialist, she also qualified for the exception as an inside sales associate.  The Court will accordingly assess the Plaintiff's position as an inventory specialist.

The parties argue extensively over whether Cain was an administrative employee exempt from the FLSA when she served as an inventory specialist.  In general, the FLSA requires employers to pay employees an overtime rate if they work more than forty hours in a week.  29 U.S.C. § 207(a)(1).  However, employers do not have to pay an employee overtime compensation if the employee is "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The Department of Labor has published guidelines for determining whether an employee serves in an administrative capacity:

(a) The term "employee employed in a bona fide administrative capacity" in section 13(a)(1) of the Act shall mean any employee:

(1) Compensated on a salary or fee basis at a rate of not less than $455 per week…;

(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200. Here, the parties do not dispute that Cain's employment in each position at Almeco satisfied the first prong of this test. Cain, however, contends that her primary duty as an inventory specialist was data entry unrelated to Almeco's management or business operations.

With respect to primary duty, the Department of Labor instructs that:

[t]he term "primary duty" means the principal, main, major or most important duty that the employee performs… Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a). "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement." 29 C.F.R. § 541.700(b).

Likewise, the department has issued guidelines on what constitutes work

directly related to the management or general business operations of an employer.

"To meet this requirement, an employee must perform work directly related to

assisting with the running or servicing of the business, as distinguished, for example,

from working on a manufacturing production line or selling a product in a retail or

service establishment."  29 C.F.R. § 541.201(a).  Examples include:

> work in functional areas such as tax; finance; accounting; budgeting;
> auditing; insurance; quality control; purchasing; procurement;
> advertising; marketing; research; safety and health; personnel
> management; human resources; employee benefits; labor relations;
> public relations, government relations; computer network, internet and
> database administration; legal and regulatory compliance; and similar
> activities.

29 C.F.R. § 541.201(b).

As noted, the administrative employee must also exercise discretion and

independent judgment with respect to matters of significance for the firm.  29 C.F.R.

§ 541.202.  In determining whether the employee did exercise such judgment, the

Court should consider:

> whether the employee has authority to formulate, affect, interpret, or
> implement management policies or operating practices; whether the
> employee carries out major assignments in conducting the operations of
> the business; whether the employee performs work that affects business
> operations to a substantial degree, even if the employee's assignments are
> related to operation of a particular segment of the business; whether the
> employee has authority to commit the employer in matters that have
> significant financial impact; whether the employee has authority to waive
> or deviate from established policies and procedures without prior
> approval; whether the employee has authority to negotiate and bind the

> company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

29 C.F.R. § 541.202(b).  However, exercising discretion "does not require that the decisions made by the employee have a finality that goes with unlimited authority and a complete absence of review… the decisions … may consist of recommendations for action rather than the actual taking of action."  29 C.F.R. § 541.202(c).

Almeco contends that Cain's role as an inventory specialist encompassed both quality control and auditing functions and affected Almeco to a substantial degree. Cain was required to analyze information in customer orders and determine if the amount of scrap produced was within company guidelines.  According to Bonnie Neumeister, Almeco's vice president, Cain had to investigate any discrepancy between the amount of scrap estimated to be used with a given project and the amount actually used.  If there was a sufficient differential, Cain would talk to an operator or a warehouse manager to get to the bottom of the discrepancy.  Neumeister testified that, after determining the cause of the discrepancy and accounting for it, Cain would have to decide if the project was within company guidelines.  (See Neumeister Dep. at 15-16).

Similarly, Almeco contends that Cain performed quality control and auditing

roles in analyzing profitability reports for each customer order.  Neumeister testified that Cain had to know the expected profit margins for various products and to assess the reasons when profits are to be lower than expected.  If Cain felt a project did not meet profitability expectations, she would "raise the alarm" and notify either the sales or operational personnel involved.  (Neumeister Dep. at 23-24).

Cain on the other hand contends that her data entry position was entirely rote and did not engender work meaningful to Almeco or involve her discretion.  Lauren O'Neill, another Almeco employee who previously held the Plaintiff's position, provided an affidavit saying that the inventory specialist position was entirely data entry.  (O'Neill Decl. ¶¶ 6-7).  Cain does not deny that she had to make comparisons concerning the amount of scrap leftover from various project orders, but maintains that her inventory specialist position was entirely data entry. However, according to the Plaintiff, she did not exercise any judgment and did not conduct important business functions with respect to the profitability reports generated.  She simply generates the reports with the click of a mouse and then forwards them to the proper person.  (Cain Dep. at 76-79).  Neumeister admitted that the actions Cain would take when a profitability report raised a flag were only to forward the reports.  (Neumeister Dep. at 51).

In <u>Papesh v. NCM of Collier County, Inc.</u>, No. 2:08-cv-78-FTM-34SPC, 2009 U.S. Dist. LEXIS 44560 (S.D. Fla. May 27, 2009), the plaintiff employee sought summary judgment claiming that she was not exempt from the FLSA overtime requirements.  The plaintiff had served as manager of the accounts payable department for the defendant, a structural subcontracting company.  The plaintiff's duties included creating a master list of bills and invoices received, printing and distributing the list, communicating with vendors regarding discrepancies and problems with invoices, and processing payments once the master list was approved by the defendant's CEO.  The plaintiff characterized her job as mostly data entry while the defendant characterized her job as one involving substantial discretion on significant matters.  The court concluded that the defendant had created a genuine issue of fact concerning whether the plaintiff exercised sufficient discretion and judgment to warrant exemption from the FLSA.  The court rested its conclusion on the defendant's contentions that the plaintiff oversaw the payment of millions of dollars to the company, that plaintiff had discretion concerning when to pay a vendor, that she was authorized to resolve discrepancies, and that the plaintiff, unlike the defendant's hourly employees, received the same salary regardless of the number of hours.  See <u>id.</u> at *2, 9-10.

Here, as in <u>Papesh</u>, the parties' respective descriptions of the Plaintiff's role working for the Defendant vary tremendously.  The Plaintiff describes her role as one

of purely data entry that would sometimes require her to flag a discrepancy or a profitability issue for the higher-ups.  The Defendant contends that the Plaintiff's role in identifying these matters was crucial to the company and required the Plaintiff to exercise her judgment.  The Defendant's contentions about the Plaintiff's duties here are similar to the defendant's contentions in <u>Papesh</u> as the Plaintiff was tasked with generating and distributing reports, identifying discrepancies, and entering customer/vendor information.  The Plaintiff was also paid a salary along with the other Almeco employees in the office rather than paid hourly like the Almeco employees in the manufacturing area.  Additionally, given Almeco's small size, Cain's inventory oversight accounted for an important share of the firm's revenue, just as the plaintiff in <u>Papesh</u> dealt with millions of dollars of customer orders.  Likewise, although Cain herself may not have had the power to override orders, she was tasked with determining whether profitability or scrap issues warranted flagging the order, which is itself an exercise of discretion.  <u>See</u> 29 C.F.R. § 541.202(c) ("employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.").  Because of the vast difference between the parties' descriptions of Cain's role at Almeco, and given the inferences due to the Defendant at the summary judgment stage, the Court concludes there is an issue of fact as to whether Cain was exempt from the FLSA in her roles as an inside

sales associate and an inventory specialist. Accordingly, the Court will deny summary judgment on those grounds.

The Plaintiff likewise claims that she falls within the administrative exception to the FLSA during the time she served as a credit analyst for the Defendant. Here, again, the parties' respective descriptions of Cain's responsibilities differ greatly. Because the Defendant has provided enough evidence to show that the Plaintiff may have exercised judgment on matters of significance, the Court will deny summary judgment.

The Plaintiff's duties as a credit analyst included preparing a biweekly report of accounts receivable and exposures, circulating the report, determining whether customers were creditworthy, determining whether to withhold orders to specific customers and, if so, directing various company employees to stop orders. The Defendant provides an email wherein another Almeco employee asks Cain if orders can be sent to specific customers, and Cain responds saying not to ship and that she will advise when shipping would be appropriate. (See Neumeister Aff. Ex. A). On other occasions, the Plaintiff sent emails to various employees directing them to hold orders to a specific customer whose bills were overdue. (See id.) Neumeister testified that Cain herself made the decision of whether to ship or hold an order and that her decisions were "completely subjective to what's going on in the market with that

particular customer." (Neumeister Dep. at 40, 47).  While working as a credit analyst,

Cain also devoted 10-20 percent of her time performing human resources tasks such

as preparing the payroll and keeping track of time off.  (Id. at 40).  The Defendant's

evidence that the Plaintiff exercised discretion in matters of significance at the credit

analyst role is sufficient to create a question of fact to survive summary judgment.

See Papesh, 2009 U.S. Dist. LEXIS 44560, at *9 (denying summary judgment to

employee on administrative exemption to FLSA in part because the defendant alleged

the plaintiff-employee had the discretion to decide whether to pay a vendor or place

the vendor on the payable list).  Accordingly, the Plaintiff's motion for summary

judgment on whether the Defendant was required to pay her for overtime hours should

be denied.

      B.     Liquidated Damages and the Statute of Limitations

     An employer found liable for violations of the FLSA is generally liable for the

employee's  unpaid  wages  and  for  "an  additional  equal  amount  as  liquidated

damages." 29 U.S.C. § 216(b).  "An employer can avoid a liquidated damages award,

however, by demonstrating that it acted in good faith and had reasonable grounds for

believing  that  the  employee  was  not  entitled  to  overtime  compensation  under  the

statute."  Papesh, 2009 U.S. Dist. LEXIS 44560, at *12 (citing Alvarez Perez v.

Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1163 (11th Cir. 2008)).  Similarly,

the statute of limitations for pursuing a claim for unpaid overtime wages under the FLSA is two years unless the employer's violation of the FLSA was willful, in which case the statute of limitations is three years.  Id. at *11.  To show the violation was willful, "the plaintiff must prove by a preponderance of the evidence that the employer 'either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was.'"  Id. (quoting Alvarez, 515 F.3d at 1163).


Because the Court cannot conclude at this time that Almeco's conduct violated the FLSA, the Court cannot conclusively determine that Cain is entitled to liquidated damages or to a three-year statute of limitations.  Although Almeco's interrogatory responses concerning its knowledge of FLSA laws are inconsistent with its deposition testimony concerning the laws, the Court cannot determine whether Almeco made a good faith attempt to adhere to the laws without a fuller understanding of Cain's job responsibilities.  See Papesh, 2009 U.S. Dist. LEXIS 44560, at *12-13 (declining to find that the defendant employer's conduct was willful or lacking in good faith without first determining whether the employee qualified for exception to the FLSA).  Accordingly, the Plaintiff's motion for summary judgment concerning whether she is entitled to liquidated damages or to the three-year statute of limitations should be denied.

C.    The Fluctuating Work Week and the Plaintiff's Total Hours

The Plaintiff seeks summary judgment on the grounds that the Defendant cannot use the fluctuating work week method to determine the amount of compensation due to the Plaintiff should she prevail on her claim under the FLSA. "The FLSA requires that employers compensate their employees for overtime hours 'at a rate not less than one and one-half times the regular rate at which [they are] employed.'" Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1310 (11th Cir. 2013) (quoting 29 U.S.C. § 207(a)(1)).  "The Act does not define the employee's 'regular rate.'  However, in the case of an employee who is paid a constant weekly salary for fluctuating hours, the Supreme Court has found it acceptable to calculate the regular rate by dividing that weekly salary by the number of hours actually worked… the 'fluctuating workweek method.'" Id. at 1310-11 (citing Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 580 (1942)).  But, "where the employee is paid solely on a weekly salary basis, the number of hours the employee's pay is intended to compensate – not necessarily the number of hours he actually works – is the divisor." Id. at 1311 (quoting Rodriguez v. Farm Grocery Stores, Inc., 518 F.3d 1259, 1268 n.5 (11th Cir. 2008)).  The Plaintiff also seeks a determination that she worked over forty hours a week at Almeco.

Here, the Plaintiff seeks summary judgment to prevent the Defendant from utilizing the fluctuating work week method in calculating damages.  However, at this time, the Plaintiff has not established that she is entitled to damages.  Because the Court concludes that there is a question of fact concerning the administrative exemption to the FLSA, the Court concludes that a determination with respect to the fluctuating work week is premature.  Further, the Defendant has offered evidence challenging the Plaintiff's assertions that she worked over forty hours a week and that the fluctuating work week would be inappropriate.  Neumeister testified that the Plaintiff may have worked over forty hours a week about fifty percent of the weeks she served as the inside sales associate and the inventory specialist, and about ten percent of the weeks she served as a credit analyst.  (See Neumeister Dep. at 61-64). However, Cain would be compensated for a full work week when she left work for sick days or vacation days, or when she otherwise left early.  (See id. at 64; Cain Dep. at 171-72).  Accordingly, the Plaintiff's motion for summary judgment should be denied in these respects.[2]

---

[2] Likewise, the Plaintiff is not entitled to costs and attorney's fees because the Plaintiff has not prevailed on any of her underlying claims.  See 29 U.S.C. § 216(b) (allowing attorney's fees in addition to any judgment awarded to the plaintiff).

IV.  Conclusion

For the reasons set for above, the Plaintiff's Motion for Summary Judgment

[Doc. 24] is DENIED.

SO ORDERED, this 14 day of November, 2013.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge